UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INDEPENDENCE BANK,

    *Plaintiff*,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, *et al.*,

    *Defendants*.

Case No. 23-cv-00447-JJM-PAS

**PLAINTIFF'S OPPOSITION TO DEFENDANT RHODE ISLAND DEPARTMENT OF BUSINESS REGULATION'S MOTION TO DISMISS**

    Plaintiff Independence Bank ("Independence") hereby submits its opposition to Defendant Rhode Island Department of Business Regulation ("RIDBR")'s Motion to Dismiss Independence's Amended Complaint (the "MTD") pursuant to Fed. R. Civ. P. 12(b)(1).

**INTRODUCTION**

    The RIDBR's MTD asks the Court to leap to the unsupportable conclusion that the Amended Complaint fails due to lack of subject matter jurisdiction before this Court. (MTD at p.1). Independence's Complaint not only meets but exceeds the requirements for standing before this Court. Despite RIDBR's assertion that Independence's claims lack both "traceability" or "redressability" with respect to its declaratory judgment and Constitutional claims against RIDBR, both claims satisfy "traceability" and "redressability" sufficiently to establish standing and provide this Court subject matter jurisdiction. RIDBR cannot now extract itself from the consequences of its decision to ignore Independence's submitted plan of liquidation (the "Plan of Liquidation"), or its involvement in the enforcement of the Consent Order it is party to, by pointing to the Federal Deposit Insurance Corporation (the "FDIC") as the true source of the "alleged unlawful, arbitrary and capricious decision making." (MTD at p. 6). Independence's Plan of Liquidation was

submitted to the RIDBR.  See Am. Compl. Exh. 2.  The FDIC does not have authority over the liquidation of a state-chartered bank.  That is RIDBR's prerogative.  And RIDBR's inaction on the Plan of Liquidation is actively causing harm to Independence today.  See Am. Compl. at ¶¶ 33-34.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Article III of the U.S. Constitution confines federal court jurisdiction to the adjudication of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 141 8. Ct. 2190, 2203 (2021). And as federal courts are of limited jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). As a result, the plaintiff bears the burden of pleading sufficient facts to plausibly demonstrate "standing" to bring the action before the federal court.  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 73 (1st Cir. 2016).

## ARGUMENT

RIDBR is correct in its assertion that, to survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff must claim injury "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 141 S.Ct. 2104, 2113 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). This is indeed foundational.  But simply stating the operative "rules of the road" is a far cry from reaching the conclusion RIDBR seeks.  A motion to dismiss on standing grounds requires an

2

analysis of those rules as applied to *these claims* made against *this defendant*. When so applied, the result if clear: Independence has standing to assert its claims against RIDBR.

      A.      **<u>Independence Bank Has Sufficiently Alleged Standing</u>**

The U.S. Supreme Court has established that the irreducible constitutional minimum requirement of standing contains three elements: first, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical'." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.E.2d 351 (1992). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43, 96 S.Ct., at 1924, 1926.

It is well-established that the party invoking federal jurisdiction bears the burden of establishing all three of these elements. *See*, *e.g.*, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990). And further, that each element must be supported in the same way as any other matter on which a party bears the burden of proof. Thus, each element must be supported with the manner and degree of evidence required at the successive stages of the litigation. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–889, 110 S.Ct. 3177, 3185–3189, 111 L.Ed.2d 695 (1990); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114–115, and n. 31, 99 S.Ct. 1601, 1614–1615, and n. 31, 60 L.Ed.2d 66 (1979). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct suffice, as on a

motion to dismiss[1] the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *National Wildlife Federation*, supra, 497 U.S., at 889, 110 S.Ct., at 3189.

When a suit challenges the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.  Here, Independence is the sole object of the action (and/or inaction) undertaken (or avoided) by the RIDBR:  Independence submitted a Plan of Liquidation to the RIDBR half a year ago (Am. Compl. ¶ 33 and Exhibit 2) but the RIDBR has chosen not to respond or act on it in any way.  Independence is thus left in limbo: until and unless RIDBR acts on the Plan of Liquidation, Independence must remain a going concern, but forcing Independence to continue operating *is itself the harm* that the instant suit seeks to remedy. RIDBR has indicated to Independence that it has no intent to act on the Plan of Liquidation until the FDIC informally approves Independence's closure, which, as set out in the Amended Complaint, the FDIC maintains it will not do.

But this does not create a question as to *standing*.  Independence has alleged particularized harm (ongoing costs to stay in business without any significant income or cash flow) that it has suffered as a direct result of RIDBR's refusal to act on the Plan of Liquidation.  Were the RIDBR to relent in its refusal to act and allow Independence to proceed with its Plan of

---

[1] In contrast, in response to a summary judgment motion, a plaintiff can no longer rest on "mere allegations," but must set forth by affidavit or other evidence "specific facts," Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115, and n. 31, 99 S.Ct. 1615, 1616, 60 L.Ed.2d 66 (1979).

Liquidation as set out in Rhode Island law, the harm would cease. Describing this, as RIDBR does, as "utterly fail[ing] to aver any causal connection between the conduct of RIDBR and Bank's alleged injury" requires one to ignore the actual allegations made of actual harm resulting from Independence's actual inability to liquidate as set out in the Amended Complaint.

This court should not ignore those allegations, which dovetail precisely with the requirements of standing.

>    B.    **RIDBR's "Dual Agency" Analysis Ignores that Only RIDBR Has The Power to, and Has Refused to, Act on Independence's Plan of Liquidation.**

RIDBR commits several pages of its MTD brief to an analysis of so-called "dual agency requirements in the context of standing" (MTD at pp. 6-7). Citing to *BBX Capital v. Federal Deposit Insurance Corp.*, 956 F.3d 1304, 1312-1313 (11" Cir. 2020), RIDBR argues that the "affirmative actions of one agency" act to vitiate standing to maintain claims against another agency. But the *BBX* case is plainly distinguishable from the case at bar: in *BBX*, the plaintiff claimed that the FDIC and the Federal Reserve Board ("FRB") violated its due process rights, and acted arbitrarily and capriciously, by limiting proposed severance payments to former bank executives. *Id*. at 1310. Those proposed severance payments needed to be approved by **both** federal agencies. *Id*. at 1313. The Court reasoned that because FDIC was the agency that vetoed the proposed severance payment, it was the FDIC's veto that caused BBX's injury. *Id*. As the Court stated in *BBX*:

> [b]ecause [the approval of the severance payments at issue] ***requires two "yeses" from the governing agencies***, even if the FRB had approved payments in excess of 12 months' salary, no payment could be made. So again, it was the FDIC's decision to prohibit any payment in excess of 12 months' salary, and not the FRB's non-decision, that harmed BBX.

*Id*. at 1313 (emphasis added). Unlike the *BBX* situation, where two agencies ***each*** had to independently approve of the plaintiff's request, and therefore a "no" from ***either*** would deny it,

5

here the plan of liquidation submitted to RIDBR did not require anything from the FDIC. The RIDBR cannot convert its own responsibilities into those of a federal agency by fiat. The FDIC has no role to play in the liquidation of a state-chartered entity, and thus the harm resulting from RIDBR's refusal to proceed with Independence's Plan of Liquidation is entirely the result of RIDBR's own inaction. (Am. Compl. ¶ 66).

While RIDBR argues for the *BBX* analysis to apply here ("Bank cannot satisfy the standing requirement of "traceability" because the injury allegedly suffered by Bank is not "fairly traceable" to any conduct of RIDBR" (MTD at p. 6)), the analysis simply does not apply due to the distinguishing context that here *only* RIDBR has a say in the approval of the Plan of Liquidation. Claiming otherwise is merely an attempt to avoid responsibility for actions entirely under the control of RIDBR by making the FDIC somehow responsible for state procedures, commonly performed without any federal agency weighing in. *See* R. I. Gen. Laws §19-10-1:

> Any financial institution or credit union that is solvent may, subject to the approval of the director, or the director's designee, liquidate and be closed by a vote of its stockholders owning two thirds (⅔) of its capital stock or, in the case of a mutually owned savings bank, two thirds (⅔) of its depositors or, in the case of credit unions, two thirds (⅔) of its members. For the purpose of closing the affairs of any financial institution or credit union, the directors shall submit a plan of liquidation to the director, or the director's designee, for approval.

Unlike the dual agency approval analyzed in *BBX*, where under 12 C.F.R. § 359.4(a)(1) the "dual" approvals necessary were explicit: payment is permissible if "[t]he appropriate federal banking agency [the FRB], with the written concurrence of the [FDIC], determines that such a payment or agreement is permissible" (*BBX Capital*, 956 F.3d at 1312), here the applicable statute expressly identifies only one necessary approval: that of RIDBR.

The FDIC has no role in the Rhode Island state procedures under R. I. Gen. Laws §19-10-1 *et seq.* re voluntary liquidation. The FDIC, further, has no authority to control an independent state agency. RIDBR cannot now be heard to claim that it was only doing the FDIC's bidding and is therefore not responsible for its own inaction.

      C.    <u>**The Complaint States a Valid Constitutional Claim Against RIDBR**</u>

Federal law creates a cause of action for violation of rights protected by the Constitution or laws of the United States as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. Independence's Amended Complaint alleges that RIDBR has unlawfully deprived Independence of its "ability to cease operating at a loss and mitigate further losses by terminating its operations and liquidating pursuant to state law." Am. Compl. ¶¶ 67. RIDBR mistakenly argues that Independence's due process and equal protection claims, "cannot establish each of the two standing components of 'traceability' and 'redressability' with respect to its claims against RIDBR." This is plainly incorrect, for the reasons set out above regarding standing. Indeed, the MTD itself essentially concedes the issue:

> as all parties readily know, the FDIC ***has effectively 'vetoed' [Independence's] proposed plan***. As such, similar to FRB in BBX, RIDBR's inaction on [Independence's] proposed plan is not the cause of [Independence's] alleged harm and [Independence's] injury is not 'fairly traceable' to RIBDR.

MTD at p. 7 (emphasis added). This, then, is the RIDBR's argument in a nutshell: the FDIC "has effectively vetoed" Independence's plan, and therefore RIDBR cannot be held responsible for its

7

inaction on that plan. This ignores that liquidation of a state-chartered financial institution under R. I. Gen. Laws §19-10-1 *et seq.* provides no role for the FDIC, and that it was and is RIDBR's inaction on the Plan of Liquidation that is currently preventing Independence from closing its doors and avoiding further financial damage.

This logic, taken to its conclusion, relives the RIDBR of any responsibility whatsoever. If RIDBR has no role to play *in its own decision-making*, it is essentially just the *alter ego* of the FDIC. And if RIDBR can simply elect not to act, based on what it describes as "effectively [a veto]" by the FDIC, then there can be no recourse for a financial institution aggrieved by the RIDBR's failure to act. This proposed approach to government responsibility contravenes both the letter *and* the spirit of R.I.G.L. § 19-10-1 *et seq*.

D. **The RIDBR's Reliance on the APA**

The RIDBR argues in the MTD that Independence's claims against RIDBR are barred by Rhode Island's Administrative Procedures Act ("APA"). Ignoring that RIDBR has quite consciously *not* taken any final action with regard to Independence's plan of liquidation, RIDBR instead focuses the court on provisions of the APA governing contested cases (R. I. Gen. Laws §42-35-1) and agency orders apply to a regulated entity (R. I. Gen. Laws §42-35-8), even going so far as to assert that Independence "elected to resolve the enforcement proceeding pursuant to the terms and conditions of the 2019 Consent Order instead of availing itself of the process and procedures set forth in the APA to contest." (MTD p. 8). But this last is an absurd assertion; the claims asserted against RIDBR in the instant suit are not the result of a contested case nor could they have been contested prior to the 2019 Consent Order, as those claims arose *in 2023*, after months of agency inaction on a plan submitted by Independence in August 2023.

The Rhode Island Supreme Court has several times addressed the outer contours of the reach of the APA and found several categories of claims where the predicates to judicial review

8

under R. I. Gen. Laws §42-35-15 were not required.  *See*, *e.g.*, *Arnold v. Lebel*, 941 A.2d 813 (R.I.2007) (plaintiff could seek a declaration that the practice of *ex parte* consultations exceeded agency authority); *Newbay Corp. v. Annarummo*, 587 A.2d 63, 65–66 (R.I.1991) (if application of an agency practice interferes with or threatens to impair the rights or privileges of a party, declaratory relief is available).  Such circumstances generally arise in the context of a practice that is challenged as unconstitutional or in excess of an agency's statutory authority.  In short, precisely the form of allegations made in Independence's claims against RIDBR.

Further, and to the extent that RIDBR's argument concerning the APA is premised on an Eleventh Amendment sovereign immunity argument (despite not referencing such an argument in its MTD brief), it is clear that a state may waive its immunity and consent to be sued. *Freeman v. Michigan Dept. of State*, 808 F.2d 1174, 1178–79 (6th Cir.1987).  R. I. Gen. Laws §9–31–1 provides, in part, "[t]he state of Rhode Island ... shall ... hereby be liable in all actions of tort in the same manner as a private individual or corporation." This constitutes a clear waiver of the State's Eleventh Amendment immunity in the appropriate cases. *See*, *e.g.*, *Pride Chrysler Plymouth v. R.I. Motor Vehicle Dealers' License Comm'n*, 721 F.Supp. 17, 22 (D.R.I.1989) (R.I.G.L. § 9–31–1 provides waiver of State's immunity for purposes of §1983 action). *See also Laird v. Chrysler Corp.*, 460 A.2d 425 (R.I.1983) (broad language of R. I. Gen. Laws §9–31–1 constitutes unambiguous waiver of Eleventh Amendment immunity from suit in federal court).

As Independence has asserted claims against RIDBR equivalent to those set forth in *Pride Chrysler Plymouth*, any argument for a lack of waiver of sovereign immunity by Rhode Island as to such claims is foreclosed.

**E.**     **The Complaint States a Claim to Which RIDBR is a Necessary Party**

In addition to the stated Constitutional claims, the allegations of the Amended Complaint also state an Administrative Procedures Act claim against the Federal Deposit

Insurance Corporation ("FDIC"). While that specific claim challenges final action undertaken by the FDIC, the RIDBR remains a necessary party with respect to that claim. As the RIDBR itself argues in the MTD, "[t]he 2019 Consent Order [between Independence, the FDIC, and the RIDBR] is central to [Independence's] claims and may be considered by this Court in connection with RIDBR's motion to dismiss." (MTD at p.5 n.2). As further set out in the MTD itself, the 2019 Consent Order is at least part of the basis for the FDIC's "effective veto" of Independence's Plan of Liquidation. If RIDBR is dismissed from the case, and Independence prevails on one or more of its claims against the FDIC, the one entity that has the legal authority to approve a plan of liquidation will not be bound by the decision.

The mandatory joinder of parties is governed by Rule 19 of the Federal Rules of Civil Procedure. The aim of Rule 19 is "to protect the interests of parties who are not yet involved in ongoing litigation." *Jiminez v. Rodriguez–Pagan*, 597 F.3d 18, 25 (1st Cir.2010). When feasible, Rule 19(a) provides for joinder of required parties, Fed.R.Civ.P. 19(a); however, when joinder of a required party is not feasible and that party is indispensable, Rule 19(b) provides for dismissal of suits. Fed.R.Civ.P. 19(a), (b). *Bacardi Intern. Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 9 (1st Cir.2013).

To determine whether the interests of a party are critical to the litigation, the Court must engage in a two-part analysis. *Id*. First, whether a party is "necessary" to the action is determined by considering the criteria set out in Rule 19(a). A party must be joined if feasible if (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's

ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed.R.Civ.P. 19(a).

If the party is deemed "necessary," but joinder would deprive the court of subject-matter jurisdiction, the Court must determine whether, applying the criteria set forth in Rule 19(b), the party is "indispensable." *Jiminez v. Rodriguez–Pagan*, 597 F.3d at 25. Those factors include "(1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 23 (1st Cir.2008). The factors are not exclusive and "a court may take into account other considerations in determining whether or not to proceed without the absentee as long as they are relevant to the question of whether to proceed in " 'equity and good conscience.' " *Id*. at 23 (quoting *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1369 (Fed.Cir.1999)). The First Circuit has explained that Rule 19 "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." *Bacardi Intern. Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d at 9 (citing *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 22 n. 19 (1st Cir.2008)); *In re Olympic Mills Corp.*, 477 F.3d 1, 9 (1st Cir.2007) (quoting *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 635 (1st Cir.1989) (quoting Advisory Committee Notes)).

Here, RIDBR is already a party in the action so the initial joinder of RIDBR is not at issue. But, to the extent that RIDBR asserts that it can be dismissed from the action without depriving Independence of the ability to obtain complete relief, that is incorrect. A judgment rendered in their absence will be inadequate, as RIDBR has a critical role to play in the termination

of operations and liquidation of a state-chartered financial institution. Should they be dismissed from the action, and Independence prevails on one or more of its claims concerning the 2019 Consent Order and Independence's right to cease operating, it's entirely plausible that RIDBR will nonetheless continue to carry out the "effective veto" of FDIC, leaving Independence in a worse position than the one in which it sits today, as it would then be unjustly harmed by improper state action *despite prevailing on its claims over that very action*.

For these reasons, RIDBR was and remains a necessary party in the action and should not be dismissed from the proceedings.

## CONCLUSION

For all of the foregoing reasons, RIDBR's motion to dismiss should be denied.

Respectfully submitted,

INDEPENDENCE BANK

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

*/s/ Travis J. McDermott*
Travis J. McDermott (#8738)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200
(401) 861-8210 FAX
tmcdermott@psh.com

DATED:  March 26, 2024

12

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 26, 2024, a copy of the within document was filed through the Court's EM/ECF system, where it is available for viewing and downloading. It will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be send to those indicated as non-registered participants.

                                              */s/ Keri Francois*

4874-5204-2668.1/008744-0051