IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| INDEPENDENCE BANK<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, and RHODE ISLAND DEPARTMENT OF BUSINESS REGULATIONS,<br><br>        Defendants. | Case No. 1:23-cv-00447-JJM-PAS |

**FEDERAL DEPOSIT INSURANCE CORPORATION'S
STATEMENT OF DISPUTED FACTS**

Defendant Federal Deposit Insurance Corporation ("FDIC"), by and through undersigned counsel and pursuant to Local Rule Cv 56, hereby responds to plaintiff Independence Bank's ("the Bank") Statement of Undisputed Facts in Support of its Motion for Summary Judgment [ECF No. 26] as follows:

    1.    The statements in this paragraph are undisputed.

    2.    The statements in this paragraph are undisputed.

    3.    The FDIC disputes that the allegations that Bank was granted delegated authority by the SBA to make eligibility determinations on these loans without SBA review. In fact, the SBA suspended the Bank's origination of SBA loans in 2019, and in 2021 the Bank voluntarily agreed not to originate any more SBA loans. AR 2052; AR 0004.

    4.    The statements in this paragraph are undisputed.

5. The statements in this paragraph are undisputed. The FDIC further avers that on July 25, 2019, the Bank entered into a Consent Order with the FDIC (and the State of Rhode Island) regarding the management of the Bank's SBA lending program. AR 1. The Bank had operated that program since 2013, originating SBA Small Loan Advantage loans for borrowers with questionable credit profiles and selling the guaranteed portions of those loans on the open market at a premium. AR 2051. The FDIC had previously identified significant weaknesses in the program, including a failure to manage the size of the Bank's loan portfolio and create a risk management framework for the loans, and a failure to police the third parties that sourced the Bank's SBA loans. AR 2052.

6. The statements in this paragraph are undisputed. The FDIC further states that in the Consent Order, the Bank agreed to address the deficiencies in its SBA lending program, and to submit a strategic plan for prospective management of the program consistent with sound banking practices. AR 0003-04. Specifically, the Bank agreed that its strategic plan would address its concentration of SBA loans as a percentage of its total capital, overall capital ratios accurately reflecting the Bank's risk profile, identification of risks arising from the program, and balance sheet and income statements for the years covered by the plan. *Id.*

7. The FDIC disputes the statements in this paragraph that the Bank "dramatically reduced its lending volume in 2019 and ceased lending in October 2019." The statements omit the reason for this reduction is that the SBA suspended the Bank's origination of loans in November 2019. AR 2052; AR 0004.

8. The statements in this paragraph are undisputed.

9. The FDIC disputes that the Bank has submitted Strategic Plan documents which sufficiently address regulatory comments. The Bank has submitted various strategic plans to

address the matters raised in the Consent Order, and the FDIC has deemed them insufficient. AR 0314, 0321.

10. The FDIC disputes that the Bank's Strategic Plan documents have addressed "recommended changes." In January 2022, the FDIC's Division of Depositor and Consumer Protection ("DCP") reviewed a large sample of the Bank's SBA loans originated in 2017, 2018, and 2019. AR 2053. That review found, *inter alia*, that the bank had improperly charged fees to SBA borrowers for services never rendered, had improperly packaged fees rather than itemizing them, had charged borrowers for underwriting services despite an SBA prohibition on such charges, and had charged for legal expenses on a flat-fee rather than an hourly basis, again in violation of SBA regulations. *Id.* The FDIC also found that the Bank had made deceptive representations to its customers regarding the fees charged and the SBA's authorization of those fees. AR 2053-54. The FDIC's review suggested that the Bank had received as much as $6.9 million in impermissible fees. *Id.* The FDIC identified those fees as potential deceptive acts and practices in violation of Section 5 of the Federal Trade Commission Act ("Section 5"). AR 321, 2054. The submitted Strategic Plans did not address these deficiencies. AR 3021.

11. The FDIC disputes that the Bank has no possibility of fully addressing the Consent Order's requirements, including submission of an appropriate Strategic Plan. The FDIC has sought voluntary restitution from the Bank, but the Bank declined to pay. AR 2054.

12. The statements in this paragraph are undisputed. The FDIC adds that the Bank informed the FDIC on February 9, 2023, that it intended to stop doing business altogether. AR 0315. Specifically, the Bank informed the FDIC that it had stopped accepting new deposits and had sold its loan portfolio. *Id.* The FDIC informed the Bank that the termination process could not begin until the Bank's outstanding regulatory obligations were satisfied. AR 317.

13. The FDIC disputes any suggestion that there has been "regulatory bad faith" or other governmental misconduct in connection with the Bank. AR 2050-2061.

14. The statements in this paragraph are undisputed.

15. The statements in this paragraph are undisputed. The March 15, 2023 letter further informed the Bank that the submitted "Strategic Plan and projections do not address the resolution and impact of" the SBA lending violations. AR 3021.

16. The statements in this paragraph are undisputed.

17. The statements in this paragraph are undisputed.

18. The statements in this paragraph are undisputed. The Bank formally sought permission to terminate its insured status on September 6, 2023. AR 1890. The Bank stated that, while it was losing approximately $300,000 per month due to overhead costs now that commercial activities at the Bank had largely ceased, it still had approximately $28 million in liquidity and a capital ratio of approximately 6.7%. AR 1891.

19. The FDIC does not dispute that Paragraph 19 quotes from and paraphrases the Bank's September 6, 2023 notice letter. The FDIC, however, disputes the letter's statement that there is no administrative basis to require resolution of outstanding regulatory matters before processing a request to cede deposit insurance, for the reasons stated in the agency's motion for summary judgment.

20. The statements in this paragraph are undisputed.

21. The statements in this paragraph are undisputed.

22. The statements in this paragraph are undisputed. At the October 4, 2023 meeting, the FDIC again informed the Bank that the termination could not proceed while the Bank had

outstanding regulatory obligations, including that the Bank owed millions of dollars in restitution to customers and borrowers of the Bank. AR 1948-49.

23. The statements in this paragraph are undisputed.

24. The statements in this paragraph are undisputed.

25. The statements in this paragraph are undisputed.

26. The statements in this paragraph are undisputed.

27. The statements in this paragraph are undisputed.

28. The statements in this paragraph are undisputed.

29. The statements in this paragraph are undisputed.

30. The statements in this paragraph are undisputed.

31. The statements in this paragraph are undisputed.

32. The statements in this paragraph are undisputed.

33. The statements in this paragraph are undisputed. The FDIC further states that on November 9, 2023, the FDIC filed a Notice of Charges against the Bank, alleging that the Bank had improperly charged SBA borrowers fees for services not performed and imposed fees prohibited by SBA regulations, as described above. The FDIC contended that these fees constituted Section 5 violations and sought a cease and desist order under § 1818(b) that included restitution to the affected borrowers. AR 2046. The proceeding remains pending before an FDIC Administrative Law Judge, and no hearing has been held to date. The FDIC has brought a separate enforcement action regarding these violations against CEO Catanzaro, and an institution-affiliated party, John C. Ponte, who was responsible for originating the bulk of the SBA loans at issue. AR 2052-53.

34. The statements in this paragraph are undisputed.

35. The statements in this paragraph are undisputed, although the quoted text appears from an internal FDIC examination note. AR 1021.

36. The statements in this paragraph are undisputed. On December 5, 2023, the FDIC's Board of Directors issued a decision ("Decision") that rejecting the Bank's application and declining to consent to the Bank's request for voluntary termination of its insured status. AR 2076-84. The Decision stated that, when the FDIC receives such an application, it is required to consider the factors set forth in 12 U.S.C. § 1828(i)(4), namely (1) the financial history and condition of the depository institution; (2) the adequacy of the depository institution's capital structure; (3) the future earnings prospects of the depository institution; (4) the general character and fitness of the management of the depository institution; (5) the convenience and needs of the community to be served by such depository institution; and (6) whether terminating the depository institution's corporate powers would be consistent with the purposes of the Federal Deposit Insurance Act ("FDIA"). AR 2078-79.

37. The statements in this paragraph are undisputed.

38. The statements in this paragraph are undisputed. The Decision noted staff's recommended findings that factors (2), (4), (5), and (6) under § 1828(i)(4) did not favor termination, while factors (1) and (3) did support termination. AR 2079. Specifically, staff had noted that the Bank had adequate capital for its current needs, including payments of any restitution orders, but would not have sufficient capital to make those payments if prompt termination were permitted. AR 2057. Deficiencies in the management of the Bank, specifically the Bank's inability to prepare a viable strategic plan to satisfy its regulatory obligations, likewise favored denying the application pending submission of an acceptable plan. AR 2057-58. The convenience and needs of the community would not be served by immediate termination,

the staff found, as the SBA borrowers that had been affected by the violations identified in the Consent Order would be left with nothing. AR 2058-59. For the same reason, staff concluded, allowing the Bank to self-liquidate and ignore its outstanding obligations would not serve the requirements set forth by law which call for meaningful corrective action and accountability for insured depository institutions, and their affiliates, who violate the law and engage in unsafe and unsound practices. AR 2059.

39. The statements in this paragraph are undisputed. The FDIC further avers that while the poor financial condition of the Bank and its dim prospects for future earnings favored termination, AR 2056-57, staff's overall recommendation deemed those factors outweighed by the considerations disfavoring FDIC consent. AR 2050-51.

40. The statements in this paragraph are undisputed.

41. The statements in this paragraph are undisputed.

42. The statements in this paragraph are undisputed.

43. The statements in this paragraph are undisputed.

44. The statements in this paragraph are undisputed.

45. The statements in this paragraph are disputed in that the FDIC staff recommendation was based, in part, on the fact that the Bank has "not yet taken appropriate corrective action to remediate the harm suffered by the Bank's borrowers…"). AR 2059.

46. The statements in this paragraph are undisputed.

47. The statements in this paragraph are undisputed. The FDIC Board's Decision adopted agency staff's recommended findings, AR 2079, and deemed it appropriate to maintain the Bank's insured status until the Bank "submit[t]ed an acceptable strategic plan outlining how

the Bank will address its outstanding regulatory issues, and (2) successfully resolves its outstanding obligations, including restitution to its customers." AR 2080.

48. The statements in this paragraph are undisputed.

49. The statements in this paragraph are undisputed.

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew Dober
Senior Counsel

/s/ Erik Bond
Erik Bond
Counsel
3501 Fairfax Drive
Arlington, VA 22226-3500
Tel.: (703) 562-6477
Fax: (703) 562-2477
Email: erbond@fdic.gov

DATED:  July 15, 2024