# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INDEPENDENCE BANK,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, and RHODE ISLAND DEPARTMENT OF BUSINESS REGULATIONS,<br><br>Defendants. | Case No. 1:23-cv-00447-JJM-PAS |

## FEDERAL DEPOSIT INSURANCE CORPORATION'S
## REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew Dober
Senior Counsel

Erik Bond
Counsel
3501 Fairfax Drive
Arlington, VA 22226-3500
Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov

DATED: September 10, 2024

Plaintiff Independence Bank (the "Bank") does not dispute that if the Court grants the relief it seeks, it will unilaterally cede its deposit insurance and distribute its assets to its shareholders. This would eliminate the FDIC's jurisdiction over the Bank, ending the agency's ongoing enforcement case, where the agency seeks instead to have $6.9 million in restitution paid to the Bank's customers harmed by the Bank's SBA lending program. Congress has specifically addressed a district court's role in this situation. 12 U.S.C. § 1818(i)(1) makes clear that "no court" shall "affect" an FDIC enforcement proceeding by "injunction or otherwise." Because granting the relief the Bank seeks would effectively terminate the FDIC's enforcement case, it clearly would "affect" the administrative proceeding. There is no subject matter jurisdiction.

The Bank contends that the jurisdictional bar of 12 U.S.C. § 1818(i)(1) is inapplicable because the Amended Complaint is nominally directed at the FDIC's decision denying the Bank permission to self-liquidate ("Decision"), but that ignores the plain text of Section 1818(i)(1), which forbids courts from issuing relief that "affects" an enforcement proceeding; nowhere does the Bank dispute that the relief it seeks would "affect" the FDIC's pending administrative restitution action. Nor would granting judgment in favor of the FDIC prevent the Bank from obtaining APA review of the Decision. The Bank would be free to refile this case after the conclusion of the administrative restitution proceeding. *Denaples v. OCC*, No. 3:09-cv-1802, 2010 WL 457134, at *7 (M.D. Pa. Feb. 4, 2010) (dismissing APA case under Section 1818(i), noting that plaintiff may later seek APA review upon completion of the administrative proceedings).

On the merits, the Bank harps on a completely irrelevant timing issue: the FDIC indicated that self-liquidation would not be permitted pending the Bank's fulfillment of its restitution

1

obligations, and later brought a proceeding to enforce those obligations. The Bank's responsibility for restitution long predated the FDIC's filing of the Notice of Charges, and the FDIC has consistently maintained that the Bank must make restitution before its deposit insurance is terminated. Nothing about that determination was inconsistent with the FDI Act. Summary judgment for the FDIC is appropriate.

## ARGUMENT

**I. Section 1818(i)(1)'s Bar Applies Because The Relief Sought Would End the FDIC's Jurisdiction, and Thus "Affect" the Ongoing Enforcement Proceeding.**

Section 1818(i)(1) prohibits courts from "affect[ing] by injunction or otherwise" FDIC enforcement proceedings. If this Court were to grant the relief sought—overturning the Decision and issuing the requested declaratory judgments—the Bank does not dispute that it would immediately self-liquidate and shed its status as an "insured depository institution." The FDIC brought its enforcement action under a provision providing for restitution by an "insured depository institution," 12 U.S.C. § 1818(b)(6), and the FDIC's administrative jurisdiction to hear that matter would evaporate. Because ruling in the Bank's favor would terminate the administrative proceeding, this action is barred by the plain text of 12 U.S.C. § 1818(i)(1).

    **1.**   *Section 1818(i)(1) Bars This Action Even Though the Amended Complaint Does Not Explicitly Seek to Enjoin the Enforcement Proceeding.*

The Bank argues that Section 1818(i)(1)'s jurisdictional bar should not apply here because it is not seeking relief specifically against the administrative proceeding itself. Reply at 7. In the Bank's telling, Section 1818(i)(1) does not apply as the Amended Complaint "seeks no injunctive or other relief in this action which concerns that proceeding," nor does the Bank have any intention to mount a collateral attack. *Id.*

It is surprising that the Bank raises this particular argument now. Last year, Judge McElroy dismissed declaratory claims John C. Ponte brought against the Bank, on grounds the declarations would "affect" the FDIC's ongoing enforcement proceeding. *Ponte v. FDIC*, 673 F. Supp. 3d 145 (D.R.I. 2023) (*"Ponte I"*) (applying § 1818(i) and dismissing claims brought against FDIC *and* the Bank as co-defendant). The statute's plain terms make clear that "no court" shall take any action which would "affect" an FDIC enforcement proceeding, through "injunction *or otherwise*." 12 U.S.C. § 1818(i)(1) (emphasis added). The relief the Bank seeks[1]—setting aside the FDIC Board's decision and declaring that nothing in 12 U.S.C. § 1818 prevents the Bank from ceding its deposit insurance—would clearly "affect" the ongoing enforcement proceeding because, if that relief were granted, the Bank would immediately self-liquidate and the FDIC's administrative jurisdiction would vanish. ECF 12 ¶¶ 57, 58.

Section 1818(i)(1) bars this action, even though the Amended Complaint does not include an injunctive count against the agency, and even thought the Bank says it does not intend to mount a collateral attack. *See Ponte I*, 673 F. Supp. 3d at 150-51; *Doral Bank*, 59 F. Supp. 3d at 366 (refusing plaintiff's request for declaratory and injunctive relief because it would interfere with 1818(i)'s "blanket prohibition" and "clear circumscription of jurisdiction"); *Denaples*, 2010 WL 457134, at *7 (dismissing APA case under Section 1818(i)).

---

[1] The amended complaint asks this Court to: (1) set aside the FDIC Board's determination declining to consent to IB's request to exit the banking business; (2) declare that both the FDIC and the RIDBR violated IB's Fifth Amendment rights by failing to allow IB to exit the banking business; and (3) issue some 13 declaratory rulings, vacating the FDIC Board determination and requiring RIDBR to take action, which would short-circuit the FDIC's pending enforcement case and allow IB to immediately liquidate. ECF 12.

### 2.     *The APA, By Its Plain Language, Does Not Support Jurisdiction in the Wake of Section 1818(i)(1).*

Next, the Bank argues that Section 1818(i)(1)'s jurisdictional bar cannot apply because "nothing in the text or cases" interpreting that statute "holds that an APA appeal cannot properly be brought relating to *other* agency action if such proceedings exist." Reply at 9. The APA's text and the case law show otherwise.

The APA provides for review of a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA, however, does not allow judicial review where another statute specifically prohibits it. 5 U.S.C. § 701(a)(1) ("This chapter applies, according to the provisions thereof, except to the extent that—(1) statutes preclude judicial review."). Here, APA review "would affect by injunction or otherwise" the FDIC's pending enforcement case seeking restitution. Section 1818(i)(1) is thus a "statue preclud[ing] judicial review," 5 U.S.C. § 701(a)(1), which bypasses normal reviewability under the APA. The Bank has no counter to the APA's plain language.

The Bank's contention that this APA appeal does not implicate Section 1818(i) because the Bank is challenging the Decision, not the ongoing administrative proceeding, has no support in the case law either. Reply at 8-9. Consider *Denaples*, for example. There, the plaintiff brought an APA challenge to OCC letters issued under 12 U.S.C. § 1829, and thereafter the OCC instituted enforcement proceedings against the plaintiff under Section 1818. 2010 WL 457134, at *5. The *Denaples* plaintiff argued that Section 1818(i)'s bar did not apply as he was challenging the agency letters under the APA, not the enforcement proceeding itself. The *Denaples* court dismissed the APA suit, rejecting plaintiff's argument that the APA claims fell outside Section 1818(i)'s "broad prohibition." 2010 WL 457134, at *6. The *Denaples* court reasoned that

4

adjudication of the APA claims "would affect by injunction or otherwise" the OCC's administrative proceeding. *Id.* The same is true here.

### 3. There is No "Lack of Statutory Authority" Exception to Section 1818(i)(1), and Even If There Were, Plaintiff Fails to Show Blatant Unlawfulness.

The Bank's argument that Section 1818(i)(1)'s bar gives way when a plaintiff alleges an agency has acted "outside statutory authority" is based on an incorrect statement of law. Moreover, the Bank does not come close to making a showing that the FDIC's conduct here was "blatantly lawless." Reply at 9-10 (citing *Leedom v. Kyne*, 358 U.S. 672 (1958)).

First, the Supreme Court, in *Board of Governors v. MCorp Financial*, 502 U.S. 32 (1991), explicitly held that *Kyne*—the case upon which the Bank relies for its "outside statutory authority" argument—does not apply to Section 1818(i)'s "clear and convincing" withdrawal of jurisdiction. Writing for the unanimous Court, Justice Stevens explained:

> *Kyne* stands for the familiar proposition that only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review. As we have explained . . ., [Section 1818(i)(1)] provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings.

502 U.S. at 44; s*ee also In re Fin. Oversight & Mgmt. Bd.*, 916 F.3d 98, 113 (1st Cir. 2019) (*Kyne* exception inapplicable to "statutory provision explicitly precluding judicial review"); *Doral Bank v. FDIC*, 59 F. Supp. 3d 358, 366 (D.P.R. 2014) (dismissing case under Section 1818(i), declining to apply *Kyne*, and holding that the "Court is not free to fashion its own exceptions to the clear, preclusive language of [12 U.S.C. 1818(i)]."); *Denaples*, 2010 WL 457134, at *7 ("In *Board of Governors v. MCorp Financial, Inc.,* 502 U.S. 32 (1991), the Court rejected the application of the holding in *Kyne* to § 1818(i)(1).")).

5

The Supreme Court's recent decision in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), which the Bank does not cite, does not change the analysis. Judge McElroy addressed this issue last year:

> Congress therefore was explicit that district courts are not to "affect" FDIC enforcement proceedings. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 38 (1991) (describing the language of § 1818(i)(1) as "plain" and "preclusive"). As such, this Court need not turn to the *Thunder Basin* factors to discern congressional intent—that intent is clear.[2] *See Axon*, 598 U.S. at 185-86; *see also id.* at 208 (Gorsuch, J., concurring) (pointing to the statute at issue in this case, 12 U.S.C. § 1818(i)(1), as an explicit carve-out to a district court's jurisdiction, rendering consideration of the Thunder Basin factors inapplicable); . . . This Court's jurisdictional analysis in *Ponte* I thus remains applicable. *See* Ponte I at ECF No. 38.

*Ponte v. FDIC*, 2023 WL 6441976, at *2 (D.R.I. Oct. 3, 2023) ("*Ponte II*").

Second, the Court need not even reach this issue because here the Decision faithfully applied statutory factors and under no standard meets the "blatantly lawless" standard advanced by the Bank, as discussed below in Section II.

4. ***Common Sense Supports Applying Section 1818(i) as Written***.

The Bank argues that denying it immediate APA review—while the FDIC administrative proceeding is ongoing—would render APA review a "dead letter." Reply at 10-11. The Bank's argument is based on bad law, as discussed above. Reply at 10 (citing *Kyne*, 358 U.S. at 193-97 (Brennan, J., dissenting)). Moreover, if this matter is dismissed, the Bank has a clear path to APA review by refiling this lawsuit after the conclusion of the administrative proceeding. *Denaples*, 2010 WL 457134, at *7 (dismissing APA case under Section 1818(i), noting that plaintiff may later seek APA review upon completion of the administrative proceeding). The Bank would not be deprived of a remedy.

---

[2] When Congress takes the *implicit*-stripping approach, courts review under a set of factors announced in *Thunder Basin Coal v. Reich*, 510 U.S. 200 (1994).

6

      5.      ***There is Nothing Speculative About How the Remedies Sought Here Would Impact the FDIC's Enforcement Proceeding.***

In the Bank's final argument regarding Section 1818(i)(1), it admits that the statute eliminates "a court's jurisdiction to issue an injunction that interferes with an enforcement action." Reply at 12. Instead, the Bank implies that since it is not seeking injunctive relief, it would be too speculative to apply the jurisdictional bar. Reply at 12 (citing *CFSA v. FDIC*, 132 F. Supp. 3d 98, 113 (D.D.C. 2015) ("[m]ere speculation that an injunction 'might' interfere with 'any notice or order'" insufficient)).

Again, there is nothing speculative about what would happen if the Bank were to prevail here. The FDIC brought its enforcement action under a provision providing for restitution by an "insured depository institution," 12 U.S.C. § 1818(b)(6), and if the Bank cedes its deposit insurance, the FDIC's administrative jurisdiction to hear the enforcement case would end. Indeed, even the Bank does not dispute that the relief it seeks would "affect" the enforcement proceeding. Congress has prohibited district courts from issuing such relief, and this case should be dismissed pending final resolution of the agency's administrative enforcement proceeding seeking restitution.

**II.**    **The FDIC Properly Withheld Consent as the Bank's Self-Liquidation Application.**

Should the Court reach the merits, it should uphold the FDIC's Decision. None of the Bank's arguments cast doubt on the correctness of the Decision.

First, nowhere does the Bank address the reasoning set forth in the Decision. The FDIC, in the Decision, addressed each of the factors governing permission to terminate deposit insurance set forth in 12 U.S.C. § 1828(i)(4), and explained why those factors did not favor permitting self-liquidation by the Bank. The FDIC's summary judgment brief defended the Decision, explaining why the Decision's treatment of each of those factors was correct and why,

7

taken as a whole, the statutory considerations supported the withholding of consent as to permission to self-liquidate. In *both* of its summary judgment filings, the Bank completely ignores those factors, and it has thereby waived any argument that the FDIC's analysis of those factors was at odds with the statute. *See, e.g.*, *Vineberg v. Bissonnette*, 529 F. Supp. 2d 300, 305 (D.R.I. 2007) (summary judgment on uncontested issue proper), *aff'd,* 548 F.3d 50 (1st Cir. 2008); *Pope v. Potter*, No. 03-544, 2005 WL 3178179, at *4 (D.R.I. Nov. 28, 2005) (same). That, in itself, permits summary judgment for the FDIC.

Second, the Bank's timing objection is meritless. The Bank points to the FDIC's February 2023 letter to the Bank in which the FDIC states that self-liquidation would not be permitted at that time because "all regulatory matters" had not been "satisfactorily resolved," and contends that "the [Notice of Charges] could not have barred the Bank's termination of insurance nine (9) months before it was issued." Reply at 3. But the basis for the FDIC's objection to the Bank's self-liquidation, then and later, was the Bank's failure to make restitution to the SBA borrowers harmed by the Bank's conduct:

> The revised Strategic Plan, approved by the Board of Directors on January 27, 2023, is to seek voluntary termination of the bank's federal deposit insurance and surrender the bank's charter to the State of Rhode Island. As a reminder, FDIC legal staff and regulatory representatives communicated to you during a November 14, 2022 conference call that the process for voluntary termination of federal deposit insurance cannot commence under Section 8(p) of the Federal Deposit Insurance Act until all outstanding regulatory matters have been satisfactorily resolved.
>
> During a meeting on December 15, 2022, and at the January 18, 2023 exit meeting for the January 24, 2022 Compliance and Community Reinvestment Act (CRA) examination, FDIC representatives from the Division of Depositor and Consumer Protection communicated to you that Unfair or Deceptive Acts or Practices (UDAP) violations of Section 5 of the Federal Trade Commission Act were identified and may be subject to potential restitution and Civil Money Penalty payable by the bank. The Strategic Plan and projections do not address the resolution and impact of these regulatory matters.

AR 321. That the FDIC subsequently filed a Notice of Charges, seeking to *enforce* those restitution obligations, does not mean that those obligations came into existence only upon that filing. Quite the contrary: the Bank's restitution liabilities arose from the Bank's misconduct prior to 2019, and those liabilities were explained to the Bank in conference calls and meetings in late 2022. The Bank's failure to make restitution payments is central to its outstanding regulatory obligations, and the FDIC has been consistent in its objection to the Bank's self-liquidation while those obligations remain unaddressed.[3]

    Third, there is no inconsistency in the FDIC's treatment of the Bank's strategic plan: nothing in the record supports the Bank's contention that the FDIC is still requesting "a strategic plan for continued operation as a Bank," Reply at 4. As the above excerpt makes clear, the Bank has long since abandoned any such plans. The FDIC maintains its objections to the Bank's strategic plan insofar as the Bank intends to wind down without making the victims of its misconduct whole. AR 2058 ("The most recently submitted strategic plan, submitted on June 2, 2023, contains deficiencies in the key areas of developing action steps to address the proposed

---

[3] The Bank likewise misses the significance of the Second Circuit's decision in *Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449 (2d Cir. 2005). The court there recognized that a bank was attempting to shed its insured status to avoid regulatory obligations—involving cross-guarantee liability—and refused to permit that tactic: "Permitting Meriden Trust to avoid liability by allowing it to determine its own status would eviscerate the congressional purpose underlying the cross-guarantee provision." *Id.* at 454. The Second Circuit recognized that it is proper to consider Congress's overall intent when considering a bank's attempts to terminate insurance—indeed, Congress expressly directed the FDIC to consider the overall "purposes of the [Federal Deposit Insurance Act," 12 U.S.C. § 1828(i)(4)—and just as Congress evidently did not want to permit banks to avoid cross-guarantee obligations by turning off their insured status, it just as evidently did not want enforcement proceeding respondents to dodge their obligations by dropping their insurance. Had Meriden Trust complained that it was being forced to maintain its insured status against its will, the Second Circuit would plainly have rejected that position, and this Court should do the same with the Bank's Amended Complaint.

restitution . . . .").[4] Those are the continuing regulatory obligations that the Bank is required to meet, and that the Bank is making no attempt to meet.[5]

Fourth, the Bank has abandoned many of the arguments in its opening brief. Notably, the Bank no longer contends that it can place funds in escrow for the payment of restitution obligations, no doubt because it has no response to the FDIC's showing that that promise is hollow. FDIC Br. at 18-19. It no longer argues that the FDIC's rejection of its strategic plans was arbitrary or capricious, now that the FDIC has pointed out that this argument is baseless on multiple levels. *Id.* at 20-21. It no longer posits that the FDIC failed to follow the statutory factors or (alternatively) that the statutory factors are inapplicable here, likely because the FDIC has shown, in detail, that it followed those factors to the letter and that it was required to do so. *Id.* at 14-18. In other words, there is virtually nothing left of the Bank's merits arguments, and what is left can quickly be rejected.

Fifth, and finally, the Bank waxes indignant that the FDIC is pointing out the Bank is attempting to shower its shareholders with its remaining reserves while precluding any relief for the injured SBA borrowers. Reply at 4. The Bank does not dispute, however, that this is precisely what would happen if the Bank were permitted to self-liquidate at this time, and its argument that this consideration is "quite distinct from that set out in the administrative record" is incorrect.[6]

---

[4] The FDIC has separately objected that the Bank has failed to develop plans for transitioning SBA servicing obligations and IT responsibilities upon its termination, AR 2058, none of which requires the Bank to continue its operations.

[5] Equally meritless for the same reason is the Bank's assertion that "even if it is ultimately determined in the administrative proceeding (or an appeal thereof) that no violations occurred and no restitution payments are required, the Bank must still receive FDIC non-objection for a strategic plan that 'governs the Bank's continuing operations' going forward." Reply at 5. The FDIC does not say this in the Decision or anywhere else in the administrative record; to the contrary, the FDIC explains that all of the bank's regulatory obligations related to the wind-down process. AR 2058. The Bank has simply invented this straw-man argument.

[6] *See* AR 2058 ("Furthermore, allowing the Bank to terminate deposit insurance, liquidate, and distribute the Bank's capital to its two shareholders (CEO Robert Catanzaro and the Robert S.

10

The FDIC makes no apology for bringing the implications of the Bank's self-liquidation plan to the Court's attention.

The FDIC properly withheld consent to the Bank's self-liquidation application. Summary judgment for the FDIC on the merits is appropriate.[7]

---

Catanzaro Family Trust) without first resolving these compliance concerns is not consistent with serving the convenience and needs of the Bank's community."); AR 2059 ("Allowing the Bank to exercise its corporate powers to self-liquidate and distribute the Bank's capital to its two shareholders (CEO Robert Catanzaro and the Robert S. Catanzaro Family Trust) without first resolving the Bank's outstanding regulatory issues would not be consistent with the purposes of the FDI Act to maintain a well-regulated banking system in which the public can have confidence."). Controlling shareholder Robert S. Catanzaro is now removed from office and prohibited pursuant to Section 8(e) of the FDI Act.

[7] If the Court agrees with the Bank's challenge (it should not), the Decision should be remanded rather than vacated. APA Section 706(2) provides that a court may "set aside agency action," found to be arbitrary, capricious, or contrary to law. It does not authorize a court to direct an agency as to how to exercise its discretion. *See Federal Power Comm. v. Transcontinental Gas Pipeline Corp.,* 423 U.S. 326, 333-34 (1976) (judicial authority to hold unlawful and set aside agency action does not accord court the power to exercise essentially administrative functions); *accord Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (remanding rather than vacating rule because of "the disruptive consequences of vacating").

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of the FDIC in this matter.[8]

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew Dober
Senior Counsel

/s/ Erik Bond
Erik Bond
Counsel
3501 Fairfax Drive
Arlington, VA 22226-3500
Tel.: (703) 562-6461
Fax: (703) 562-2477
Email: erbond@fdic.gov

DATED:  September 10, 2024

---

[8] The FDIC's Cross Motion addressed how the Bank's constitutional claim (Count II) is meritless (ECF 28 at 22-23), and the Bank has no response to this. Summary judgment on this count in favor of the agency is appropriate. *See, e.g.*, *Vineberg*, 529 F. Supp. 2d at 305 (summary judgment on uncontested issue proper); *Pope*, 2005 WL 3178179, at *4 (same).